**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **U. S. COMMODITY FUTURES TRADING COMMISSION,** **Plaintiff,** vs. **YUMIN LI, and KERING CAPITAL LTD,** **Defendants** **KERING CAPITAL LTD,** **Relief Defendant.** | **Civil Action No:** **Judge** **Jury Demanded** |

**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF
AND CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT**

The U.S. Commodity Futures Trading Commission ("CFTC" or "Commission"), by and through its attorneys, hereby alleges as follows:

**I.     SUMMARY**

1.     On six trading dates from March 17, 2015 to May 6, 2015 ("Relevant Period"), Defendant Yumin Li ("Li") fraudulently accessed and improperly traded her employer's account in order to move approximately $300,000 to Defendant Kering Capital Ltd. ("Kering Capital") (the individual and corporation, collectively, "Defendants"). By structuring the transactions such that her employer's account would always buy at higher prices and sell at lower prices opposite an account Li controlled at Kering Capital, Li was able to conduct a "money pass" between the two accounts in favor of the Kering Capital account.

2. By virtue of this conduct and the conduct further described herein, Defendants have engaged, are engaging or are about to engage in conduct in violation of (i) Sections 4b(a)(1)(A) and (C) of the Commodity Exchange Act ("Act"), 7 U.S.C. § § 6b(a)(1)(A) and (C) (2012), by cheating or defrauding Li's employer through her unauthorized use of his account; (ii) Section 4c(a) of the Act, 7 U.S.C. § 6c(a) (2012), by entering into transactions that are pre-arranged, fictitious sales, and/or wash sales involving the purchase or sale of commodities for future delivery; and (iii) Regulation 1.38(a), 17.C.F.R. § 1.38(a) (2014), by entering into illegal, non-competitive transactions to buy and sell futures contracts.

3. Unless restrained and enjoined by this Court, Defendants are likely to continue to engage in the acts and practices alleged in this Complaint and in similar acts and practices, as more fully described below.

4. Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), the Commission brings this action to enjoin such acts and practices, prevent the dissipation of assets, and compel compliance with the provisions of the Act. In addition, the Commission seeks civil penalties and remedial ancillary relief, including but not limited to, trading bans, restitution, disgorgement, an accounting, pre and post-judgment interest and such other statutory and equitable relief as the Court may deem necessary or appropriate under the circumstances.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a). Section 6c(a) of the Act authorizes the CFTC to seek injunctive relief against any person whenever it shall appear to the CFTC that such person has engaged, is engaging or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order promulgated thereunder.

6. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because Defendants transacted business in this District, and the acts and practices in violation of the Act have occurred, are occurring or are about to occur within this District.

### III. THE PARTIES AND RELIEF DEFENDANT

7. Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with administering and enforcing the provisions of the Act (2012) and the Commission Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2014).

8. Defendant **Yumin Li ("Li")** is a Chinese citizen who lived in the United States during the relevant period. From February 2014 until May 2015 Li was employed by a trading firm in Alamo, California to conduct research related to the futures market. Li has never been registered with the Commission.

9. Defendant and Relief Defendant **Kering Capital Limited ("Kering Capital")** is a trading company incorporated in the British Virgin Islands. Kering Capital was formed in November 2014 by Li's mother, who is its Chief Executive Officer and sole shareholder. Beginning in March 2015, Kering Capital authorized Li to trade futures on its behalf. It has never been registered with the Commission in any capacity. Kering Capital received funds that were obtained through Li's unlawful conduct and to which Kering Capital had no legitimate interest or entitlement. Therefore, Kering Capital is also a Relief Defendant in this matter.

### IV. FACTUAL BACKGROUND

**A. Eurodollar Trading on the Chicago Mercantile Exchange**

10. Chicago Mercantile Exchange ("CME") is a designated contract market located in Chicago, Illinois that provides a marketplace for trading futures products, such as Eurodollar futures.

11. CME offers an electronic trading platform, CME Globex, in which traders place various orders for futures in its order book, and CME's matching engine arranges trades using those orders. CME's regular trading hours are 7:00 AM to 4:00 PM central time ("CT"), but traders are also able to place orders in CME Globex outside of CME's regular trading hours. Using CME Globex, a trader is able to enter orders electronically in Eurodollar futures contracts on weekdays during all but one hour of the day (4:00 to 5:00pm CT).

12. One trading strategy is to buy or sell multiple Eurodollar contracts at one time in a transaction known as a "spread." Using a "butterfly spread," a trader may establish positions in Eurodollar futures contracts with three or more distinct expiration dates.

13. Eurodollar futures contracts with "distant" expiration dates that are five or more years beyond the trade date are generally less liquid than Eurodollar contracts with earlier "nearby" expiration dates, in that there are fewer bids to buy and offers to sell futures contracts by market participants. In some Eurodollar contracts with expiration dates that are five or more years beyond the trade date, there is very little trading whatsoever.

14. Generally, futures markets are price discovery markets that provide a centralized marketplace where traders can shift risk. Price discovery occurs through the open and competitive execution of trades on the centralized market. To protect the integrity of the price discovery process, the Act and Regulations generally require offers to be open and available to the market as a whole (*i.e.*, potentially matched with any other offer). The Act and Regulations prohibit trading practices that undermine the price discovery process, such as pre-arranged trading or fictitious sales.

**B. Li's Control Over Two Trading Accounts**

15. Li carried out a money pass by using two trading accounts held at different registered futures commission merchants ("FCMs").

4

16. One trading account belonged to Li's employer, and its account number was XXXX8202 ("Employer 8202"). Li's employer had a unique CME user identifier ("Tag 50") that allowed him to control trading within the account. Li's employer had provided Li with his Tag 50 for purposes of trade research; Li was not authorized to use her employer's Tag 50 for Eurodollar futures trading.

17. The second account belonged to Kering Capital, and its account number was XXXX2536 ("Kering Capital 2536"). Kering Capital opened an account at a U.S. FCM in December 2014, and it informed the FCM that Li's mother, Yanping Lu, would be trading for the account. Yanping Lu was issued a unique Tag 50 for her futures trading.

18. Kering Capital authorized Li to trade on behalf of Kering Capital during the relevant period. Li was to receive compensation in the form of commissions for profitable trading. Li, using her mother's Tag 50, was the only person trading Kering Capital 2536 from March 2015 through May 2015.

C.  **Li's Scheme to Siphon Money Through Eurodollar Spread Trading**

19. A money pass is a form of non-competitive trading in which one trader intentionally loses money to another trader, typically where one trader buys a quantity of contracts at a high price opposite the other trader, and sells back the same quantity of contracts at a low price opposite the same trader, leaving neither trader with a resulting futures or options position (*i.e.*, a "round turn"). What appears to the market to be a legitimate trade between two arm's-length parties is instead a pre-arranged scheme to move money from one account to the other.

20. Beginning on March 17, 2015 and continuing on selected dates until May 6, 2015, Li carried out a money pass scheme whereby she moved money from her employer's account to Kering Capital through a series of round-turn Eurodollar transactions at the CME. In order to

5

ensure that her employer's and Kering Capital's orders would match, Li concentrated her trading in illiquid Eurodollar contracts with expiration dates that were five or more years beyond the trade date. In addition, she traded outside of regular CME trading hours, which meant there would be fewer market participants trading, and she would have a better chance of matching the orders.

21. In each of those transactions, Li would use Kering Capital 2536 to place an order for a Eurodollar spread of a certain quantity at certain price. Li would then place a second order using Employer 8202 on the opposite side of the market in the same product for the same quantity and same price.

22. After the orders were matched in one transaction, Li would enter into equal and offsetting transactions to close out the position. Li entered matched orders in this pattern on at least March 17, 2015, March 18, 2015, March 19, 2015, April 1, 2014 and April 24, 2015, and May 6, 2015.

23. For example, on May 6, 2015 Li entered orders for Kering Capital 2536 and placed corresponding orders from Employer 8202 on the opposite side of the market. Between 12:42:54 AM and 12:43:05 AM CT, she entered multiple orders for Kering Capital 2536 to sell Eurodollar butterfly spreads, which consisted of selling 600 December 2021 Eurodollar futures, buying 1,200 September 2022 Eurodollar futures, and selling 600 June 2023 Eurodollar futures, at a price differential of 3.0. Between 12:44:17 AM and 12:44:21 AM CT, Li entered orders for Employer 8202 to buy an equal quantity of the same spread at the same price (3.0). Because she entered the orders for Employer 8202 with the same quantities and prices as the orders for Kering Capital 2536, the two accounts' orders matched and traded opposite each other.

24. As soon as the orders were matched, Li immediately closed out the position. Between 12:43:22 AM and 12:44:02 AM CT, she entered multiple orders for Kering Capital 2536 to buy the same quantities of Eurodollar butterfly spreads at price differentials of -1.5 and -1.0. Between 12:44:23 AM and 12:44:34 AM CT, she entered orders for Employer 8202 to sell the same quantities of the spread at the same prices (-1.5 and -1.0). Because she entered orders for Employer 8202 with the same quantities and prices as the orders for the Kering Capital 2536, and no other market participant submitted an intervening order, the two accounts' orders matched and traded opposite each other in full immediately after the orders for Employer 8202 were entered.

25. This particular series of transactions resulted in a $67,487.50 gain to Kering Capital 2536, and a corresponding loss to Employer 8202.

26. Using this methodology, Li traded the accounts exclusively against each other on CME. By placing nearly simultaneous, matching orders, trading in illiquid Eurodollar products, and trading outside regular CME trading hours, Li virtually eliminated the possibility of trading with any other counterparty. Indeed, during each series of orders that Li entered, Kering Capital 2536 and Employer 8202 were the only two accounts trading in the particular spread markets.

27. Kering Capital 2536 executed 41 round-turn trades opposite of Employer 8202 on CME Globex. Each time a position was closed out, it resulted in a loss to Employer 8202 and a gain to Kering Capital 2536. As a result, Li was able to transfer at least $300,000 to Kering Capital 2536.

28. Li did not execute these trades in accordance with CME's written rules.

7

29. Li intended these transactions to appear as arm's-length transactions to the market but, instead, they were part of a scheme to defraud her employer and siphon at least $300,000 to Kering Capital 2536.

## V. VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT ONE

**Violations of 4b of the Act:
Fraud by Unauthorized Trading and Misappropriation**

30. Paragraphs 1 through 29 are re-alleged and incorporated herein.

31. During the Relevant Period, Defendants violated Section 4b(a)(1)(A) and (C) of the Act, 7 U.S.C. §§ 6b(a)(1)(A) and (C) (2012), in that she cheated or defrauded or attempted to cheat or defraud and willfully deceived or attempted to deceive her employer by knowingly entering unauthorized trades, for or on behalf of her employer, in her employer's account and structuring the trades in such a way as to shift money from her employer to Kering Capital. By such acts, defendants misappropriated her employer's funds.

32. Li committed these acts intentionally or recklessly.

33. Li engaged in this conduct in connection with orders to make, or the making of, contracts of sale of commodities, for future delivery, made, or to be made, for or on behalf of such other persons where such contracts for future delivery were or may have been used for hedging any transaction in interstate commerce in such commodity, or the products or byproducts thereof, or determining the price basis of any transaction in interstate commerce in such commodity, or delivering any such commodity sold, shipped or received in interstate commerce for the fulfillment thereof.

34. Li's acts occurred during the scope of her employment or agency with Kering Capital and are deemed to be the acts of Kering Capital by operation of Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) and Regulation 1.2, 17 C.F.R. § 1.2.

35. Each unauthorized order made during the Relevant Period, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4b(a)(1)(A) and (C) of the Act.

## COUNT TWO

### Violations of 4c(a) of the Act:
### Fictitious Sales

36. Paragraphs 1 through 29 are re-alleged and incorporated herein.

37. Li violated Section 4c(a) of the Act, 7 U.S.C. 6c(a), by entering into a transaction that is of the character of, or is commonly known to the trade as a fictitious sale, specifically a money pass, involving the purchase or sale of a commodity for future delivery which transaction was used or may have been used to hedge any transaction in interstate commerce in the commodity or the product or byproduct of the commodity; or to determine the price basis of any such transaction in interstate commerce in the commodity; or to deliver any such commodity sold, shipped, or received in interstate commerce.

38. Li's acts occurred during the scope of her employment or agency with Kering Capital and are deemed to be the acts of Kering Capital by operation of Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2012) and Regulation 1.2, 17 C.F.R. § 1.2 (2014).

39. Each order entered by Defendants, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4c(a) of the Act.

## COUNT THREE

### Violations of Commission Regulation 1.38(a):
### Non-Competitive Transactions

40. Paragraphs 1 through 29 are re-alleged and incorporated herein.

41. Regulation 1.38, 17 C.F.R. §1.38 (2014), requires that all purchases and sales of commodity futures contracts be executed "openly and competitively."

42. Li violated Regulation 1.38 by knowingly engaging in a series of non-competitive futures transactions.

43. Li's acts occurred during the scope of her employment or agency with Kering Capital and are deemed to be the acts of Kering Capital by operation of Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

44. Each order entered by Defendants, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Regulation 1.38(a), 17 C.F.R. §1.38.

## COUNT FOUR

### Disgorgement of Funds from Relief Defendant

45. Paragraphs 1 through 29 are realleged and incorporated herein by reference.

46. By knowingly entering unauthorized trades through her employer's account and structuring the trades in such a way as to shift money from her employer to Kering Capital, Li misappropriated her employer's funds in violation of the Act.

47. Kering Capital received Li's employer's funds as a result of Li's prearranged trades and misappropriation. Kering Capital has no legitimate interest or entitlement in those funds and has thereby been unjustly enriched.

48. Kering Capital should be required to disgorge funds up to the amount of funds it received as a result of Li's unlawful conduct or the value of those funds that it may have subsequently transferred to third parties.

## VI. RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2014), and pursuant to its own equitable powers:

A. Enter an order finding Defendants liable for violating Sections 4b(a)(1)(A) and (C) and Section 4c(a) of the Act, 7 U.S.C. § § 6b(a)(1)(A),(C) and 6c(a) (2012), and Commission Regulation 1.38(a), 17 C.F.R. §1.38(a) (2014);

B. Enter a statutory restraining order restraining and enjoining Defendants, and any successors thereof, and all persons insofar as they are acting in the capacity of Defendants' agents, servants, successors, employees, assigns, and attorneys, and all persons insofar as they are acting in active concert or participation with Defendants who receive actual notice of such order by personal service or otherwise, from directly or indirectly:

    1. Destroying, mutilating, concealing, altering, or disposing of any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records, or other property of Defendants, wherever located, including all such records concerning Defendants' business operations;

    2. Refusing to permit authorized representatives of the Commission to inspect, when and as requested, any books and records, documents, correspondence, brochures, manuals, electronically stored data, tape records, or other property of Defendants, wherever located, including all such records concerning Defendants' business operations; and

    3. Withdrawing, transferring, removing, dissipating, concealing, or disposing of, in any manner, any funds, assets, or other property, wherever situated, associated with the illegal conduct alleged above including, but not limited to, all funds on deposit in any futures trading account owned or controlled by a Defendant, including but not limited to Kering Capital 0256 and an account in the name of Li, account number XXXX0253;

C. Enter orders of preliminary and permanent injunction prohibiting Defendants and any other person or entity associated with them, including successors thereof, from:

1. Engaging in conduct in violation of Sections 4b(a)(1)(A) and (C) and 4c(a) of the Act, 7 U.S.C. §§ 6b(a)(1)(A), (C), and 6c(a), and Regulation 1.38(a), 17 C.F.R. § 1.38(a);

2. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29));

3. Entering into any transactions involving "commodity interests" (as that term is defined in regulation 1.3(yy), 17 C.F.R. § 1.3(yy) (2014), for accounts held in the name of any Defendant or for accounts in which any Defendant has a direct or indirect interest;

4. Having any interests traded on any Defendants' behalf;

5. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

6. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any interests;

7. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014); and

8. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2014)), agent, or any other officer or employee of any person registered, exempted from registration or required to be registered with the CFTC except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2014).

D. An order requiring each Defendant to pay civil penalties under the Act, to be assessed by the Court, in amounts of not more than the higher of (1) triple the monetary gain for each violation of the Act; or (2) $140,000 for each violation of the Act and Commission Regulations;

      E.      An order directing Li and Kering Capital, and any successors thereof, to disgorge pursuant to such procedure as the Court may order, all benefits received including, but not limited to, trading profits, revenues, salaries, commissions, fees or loans derived directly or indirectly from acts or practices which constitute violations of the Act and Commission Regulations as described herein, including pre-judgment interest thereon from the date of such violations;

      F.      An order directing Defendants, and any successors thereof, to make full restitution to every customer, client or investor whose funds were received by them as a result of acts and practices which constituted violations of the Act and Regulations, as described herein, and interest thereon from the date of such violations;

      G.      An order directing that Defendants, and any successors thereof, make an accounting to the Court of all of their assets and liabilities, together with all funds they received from and paid to clients and other persons in connection with commodity futures transactions and all disbursements for any purpose whatsoever of funds received from commodity transactions, including salaries, commissions, interest, fees, loans and other disbursement of money or property of any kind from March 1, 2015 to the date of such accounting;

      H.      An order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

      I.      An order providing such other and further relief as this Court may deem necessary and appropriate under the circumstances.

                                                    Respectfully submitted,

Date: July 1, 2015                            /s/ Lindsey Evans
                                                    Lindsey Evans (IL ARDC No. 6286125)
                                                      Commodity Futures Trading Commission
                                                      525 West Monroe Street, Suite 1100
                                                      Chicago, Illinois 60661
                                                      (312) 596-0643
                                                      levans@cftc.gov

                                                      David Terrell (dterrel1@cftc.gov)
                                                      IL ARDC No. 6196293
                                                      Scott Williamson (swilliamson@cftc.gov)
                                                      IL ARDC No. 6191293
                                                      Rosemary Hollinger (rhollinger@cftc.gov)
                                                      IL ARDC No. 3123647
                                                      Commodity Futures Trading Commission
                                                      525 West Monroe Street, Suite 1100
                                                      Chicago, Illinois 60661
                                                      (312) 596-0700